IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BLUE SKY TRAVEL &, <br> TOURS, LLC, *et al.*, <br> <br> Plaintiffs, <br> v. <br> <br> NASSER AQEEL AL TAYYAR, *et al.* <br> <br> Defendants. | Civil Action No. 1:12-cv-1142 |

## **MEMORANDUM OPINION**

This breach of contract case was tried before a jury beginning on September 23, 2013. On September 25, 2013, the jury returned a verdict as to Count I of the Amended Complaint in the amount $1,940,050.89 in favor of plaintiff Blue Sky Travel and Tours, LLC ("Blue Sky") and against defendant Al Tayyar Group ("ATG"), together with a finding that Blue Sky and ATG had agreed to share profits realized by ATG from its resale of airline tickets, purchased by Blue Sky, to the Saudi Arabian Ministry of Higher Education (the "Ministry"). The jury also returned a verdict as to Count III of the Amended Complaint in the amount of $661,000 in favor of plaintiff Mahmoud Riad Mahmoud ("Riad") and against defendant Nasser Aqeel Al Tayyar ("Al Tayyar").

Before the start of the trial on September 23, 2013, the parties waived a jury with respect to the issue of damages pertaining to the oral profit sharing agreement alleged in Count I and agreed that the Court would decide that issue in the event that the jury determined, as it did, that the parties entered into the alleged profit sharing agreement as a part of the overall oral contract in Count I. On September 26, 2013, following the jury's verdict, the Court held a hearing with

1

respect to the issue of damages and also ATG's statute of frauds affirmative defense.[1] At that time, through its written submission on September 25, 2013 [Doc. No. 177], as supplemented in Court on September 26, 2013, ATG proffered certain evidence that it would present at a supplemental evidentiary hearing; and the parties presented supplemental arguments concerning the merits of the statute of frauds defense.

Upon consideration of defendant's proffers and the parties' arguments, the evidence presented at trial, the limiting pre-trial rulings of the Magistrate Judge pertaining to the scope of admissible evidence and permissible argument on damages, and this Court's affirmance of those rulings that defendant appealed in this Court, the Court concludes that the defendant ATG has failed to sustain its burden of proof with respect to its statute of frauds defense, that no further evidentiary hearing is appropriate or necessary in order to adjudicate and render a verdict on the issue of damages submitted to the Court for decision, and that Blue Sky sustained damages in the amount of $10 million as a result of defendant ATG's breach of the profit sharing portion of the contract alleged in Count I.

### 1. **Defendant ATG failed to sustain its burden of proof that the oral profit sharing agreement is within the the statute of frauds**

ATG does not claim that any aspect of the June 2011 oral agreement is unenforceable under the statute of frauds other than the oral promise to share profits; and in that regard, ATG argues that since Blue Sky's share of ATG's profits for 2012 could not have been calculated until after the end of calendar year 2012, an oral contract calling for the sharing of such profits could not have been performed within a year of June 2011. Based on all the evidence presented and

---

[1] Defendants did not request that the statute of frauds defense be submitted to the jury, or that the jury make any factual findings with respect to that defense; and that affirmative defense has been submitted to the Court to be decided as a matter of law in connection with ATG's motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), as to which the Court reserved decision during the trial.

2

proffered, the Court finds and concludes that defendant ATG has failed to carry its burden of proof that the oral profit sharing agreement is within the statute of frauds.

The statute of frauds, as adopted in Virginia at Va. Code Ann. § 11-2(8), states in pertinent part:

> Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought...[u]pon any agreement that is not to be performed within a year.

The party asserting the affirmative defense of the statute of frauds, as defendants did in their Answer to the Amended Complaint [Doc. No. 82], bears the burden of establishing that the parties' oral agreement was within the statute. *See Baker v. Jim Walter Homes, Inc.*, 438 F. Supp. 2d 649, 652 (W.D. Va. 2006); *See also Agbey v. Dalloul*, 41 Va. Cir. 3 (1996)("Defendants have failed to carry their burden in convincing the Court that the contract could not be performed in a year."); and *Dynegy, Inc. v. Yates*, 2013 WL 4608711 (Tex. Aug. 30, 2013)(defendant "pled the statute of frauds as an affirmative defense and thus had the initial burden to establish that the alleged promise fell within the statute of frauds."). Whether the statute of frauds applies to a given contract is an issue of law; and the dispositive issue is whether the contract as a whole "... can be fully performed *on one side* within a year, although it can be done by the occurrence of some improbable event." *Silverman v. Bernot*, 218 Va. 650, 654 239 S.E.2d 118 (1977)(emphasis added). In other words, the issue is whether the Court can conjure up some contingency, no matter how improbable, that would allow either Blue Sky or ATG to completely perform all of its contract obligations within one year of June 2011.

Here, the Court finds and concludes that the parties' agreement with respect to airline tickets was premised on ATG's receiving orders for tickets from the Ministry, and that without such orders there would be no orders to Blue Sky to purchase the tickets and no profits to be

3

shared. However, there is nothing in the Ministry contract that obligates the Ministry to order any tickets at any time, and the Court, based on the record before it, cannot rule out the possibility that the Ministry, without breach, could have decided not to order any tickets or stopped ordering tickets altogether from ATG at any time, thereby eliminating any possible need for any performance by Blue Sky or ATG. The Court also cannot rule out the possibility that the Ministry contract itself could have been terminated within a year of the parties' June 2011 agreement.[2] Under either scenario, the Court cannot rule out the possibility that either or both parties might have completed their performance under their contract within a year of June 2011, without breach or termination of their agreement.[3] ATG has therefore failed to carry its burden

---

[2] Defendant Al Tayyar testified during his direct examination that the contract between ATG and the Ministry was originally for four years and was then extended for another four years after an additional competition. There is nothing in the evidence to establish when the first referenced contract was entered into or its successor contract; and his testimony appears inconsistent with the only Ministry contract admitted into evidence, which is dated April 16, 2005. That Ministry contract has an initial term of one year and is renewable upon written consent of the two parties, without any term specified upon renewal. Def. Exh. 7, item #3. No written extensions of that contract were introduced.

The Ministry contract is also silent as to any commitment or obligation on the part of the Ministry to actually order any tickets or use any other services of ATG, although the contract does affirmatively impose certain obligations on ATG. *See Id*, at item # 1 ("[t]he subject matter of this Contract is the commitment of [ATG] to provide all necessary operations for the sale and issuing of tickets and bookings for employees of the Ministry, and to provide all accompanying services, etc., according to the travel order(s) issued by the ministry to its employees and similarly to the students sent outside of the Kingdom from time to time."

No evidence has been offered concerning how the Ministry contract would be construed under Saudi law, either with respect to the term of that contract after the initial one year term, or the obligations of the Ministry under that contract. *See* Defense Exh. 7, ¶ 7 ("[t]his Contract is subject to the regulations of the Kingdom, and its interpretation, execution, and the division of claims arising from it shall occur in accordance with said regulations."). The Court cannot therefore rule out that after the initial year of the Ministry contract, the contract continued as a contract terminable for cause or for the convenience of the Ministry.

[3] While it is true that ATG's obligation to share profits realized by the resale of tickets to the Ministry in 2012 could not be calculable until after the end of 2012, any obligations under the Ministry contract might have ended before any tickets were ordered by ATG and purchased by Blue Sky, bringing the parties' performance obligations to an end immediately without the need to calculate profits. Moreover, even were there profits to share, such that ATG could not

4

of establishing that the parties' oral agreement could not have been fully performed by either party within one year of June 2011. For these reasons, the Court concludes that the parties' profit sharing agreement does not bring the oral contract within the statute of frauds.[4] *See Jordan v. Miller*, 75 Va. 442, 447 (1881)(finding that a parole contract of partnership, without any fixed time for its continuance, the business of which may be completed within a year, is not within the statute of frauds).

### 2. **Defendant ATG has neither presented nor proffered admissible evidence that would rebut the presumption of $20 million in profits resulting from the resale of Blue Sky's tickets to the Saudi Arabian Ministry of Higher Education.**

Defendants' discovery failures resulted in orders that substantially limited the evidence defendant ATG could present at trial and also established the amount of damages that would be presumed by the fact finder.[5] Under those orders, ATG was "precluded from producing any evidence or arguing in a motion for summary judgment or at trial that Defendant, Al Tayyar Group, makes only a 5 percent markup for all vendors." Doc. No. 124. It was also decided to have "the Jury instructed that it may presume that the profits made on Blue Sky Travel and

---

complete its performance until after the end of 2012, Blue Sky might have completely performed all of its duties within a year in order to receive its share of those profits.

[4] Because the Court concludes that the statute of frauds does not apply to the parties' contract, there is no need for the Court to decide whether the parties' performance under their oral contract was completely discretionary or terminable at will and if so, whether those aspects of their oral contract, as opposed to the Ministry contract, take their oral contract outside the statute of frauds. Likewise, there is no need for the Court to determine whether, even if the statute of frauds applied, the contract is nevertheless enforceable under the doctrines of equitable estoppel or partial or complete performance.

[5] The proceedings that resulted in these orders included hearings on plaintiffs' two motions to compel discovery [Doc. Nos. 44 and 79], plaintiffs' two motions for sanctions [Doc. Nos. 95 and 113], and plaintiffs' Motion for Default Judgment [Doc. No. 130], all pertaining to defendants' repeated failure to produce requested documents responsive to inquiries regarding their profits. As stated in this Court's Order affirming the decision of the Magistrate Judge to impose a $20 million presumption of damages in this case, ATG's repeated failures to comply with discovery orders effectively limited, if not completely eliminated, Blue Sky's opportunity to establish its claim for damages.

5

Tours' ticket sales to the Al Tayyar Group and resold to the Saudi Ministry of Higher Education were 20 million dollars." Doc. Nos. 151 and 167.[6] In light of those orders, the Court has considered defendant ATG's proffers of evidence it would present at a supplemental evidentiary hearing on damages. That proffered evidence includes the following:

1. ATG only made 5% profit on the resale of tickets to the Ministry;

2. ATG only billed the Ministry for $800,000 worth of the tickets purchased by Blue Sky, and received in return only $840,000, which represents a 5% commission; and that the decision to not send the remaining ticketing packages to the Ministry was based on valid business judgment.

3. The oral agreement for profit sharing was to be profits derived from a year's worth of ticket sales, such that Blue Sky should only be entitled to a pro rata amount of the yearly profits based on the eight week period in 2012 during which Blue Sky purchased tickets for ATG for resale to the Ministry.

According to ATG's proffer, ATG would present the above described evidence through the testimony of officials from the Ministry or potentially through other Saudi government officials, as well as other documents, including yet to be produced banking statements.

Upon review of ATG's proffered evidence, the Court finds and concludes that all of defendant's relied upon evidence in support of its position on damages has either already been presented at trial or would be inadmissible, either because such evidence is barred by the pre-trial orders entered in this case or because the documents and witnesses were never produced or identified, as required. For these reasons, there is no need for an additional post-verdict evidentiary hearing on the issue of damages with respect to the profit sharing agreement under Count I.

---

[6] On September 20, 2013, the Court affirmed the Order of the Magistrate Judge [Doc. No. 151], providing for the presumption regarding ATG's profits resulting from the resale of Blue Sky tickets to the Ministry. On September 30, 2013, defendants filed their Motion for Limited Reconsideration [Doc. No. 181], requesting reconsideration of that ruling, which the Court denies.

First, as to damages under the profit sharing agreement, the Court finds that ATG has offered nothing by way of admitted or proffered evidence that, consistent with defendants' discovery and pre-trial disclosure obligations or this Court's orders, can be considered sufficient to rebut the presumption that ATG realized profits in the amount of $20 million from its resale of Blue Sky purchased tickets to the Ministry, which the Court finds represents a fair and reasonable estimate of the profits that ATG likely has or would have generated from Blue Sky's tickets.[7] Second, based on the jury's finding that Blue Sky had substantially performed under its oral profit sharing agreement with ATG, the Court finds and concludes that ATG was obligated to share its profits from its resale of the Blue Sky purchased tickets to the Ministry, that it failed to do so, and that it breached the profit sharing agreement by that failure. In that connection, the Court finds and concludes that ATG did, in fact, bill the Ministry for the Blue Sky purchased tickets or breached the parties' profit sharing agreement to the extent that ATG did not bill the Ministry for the Blue Sky purchased tickets, the Court concluding that there was no legal justification that would excuse ATG's obligation to bill the Ministry.[8] Finally, the Court finds and concludes that ATG realized, or would have realized, absent its breach of the profit sharing

---

[7] For example, the discovery that ATG did provide suggests that it realized an overall profit on its goods and services of approximately 100% over its cost; and by that measure, the $20 million presumed profit bears a reasonable relationship to the approximately $18.4 million in tickets that Blue Sky billed to ATG for resale to the Ministry.

[8] The jury's finding that Blue Sky substantially performed under the contract in Count I implicitly decided that Blue Sky had properly documented to ATG the tickets it purchased. That finding was clearly supported by the evidence, including the testimony of Sherin Nour, who testified that Blue Sky's documentation was complete and accurate, except in one minor respect, and also by defendant's own admission that Blue Sky had adequately documented approximately $17.1 million out of the approximately $18.4 million in ticket sales. *See* Def. Exh. 4. Moreover, based on the Court's assessment of the evidence, including the credibility of the witnesses, the Court finds implausible ATG's claim that it did not bill the Ministry for over $17 million in tickets, over $16 million of which it had already paid Blue Sky. The Court also finds, as reflected above, that even if ATG did not bill the Ministry, as it claims, any such decision was likely made in order to avoid generating the profits it knew would need to be shared with Blue Sky, and not because of any legitimate business reason.

agreement, $20 million in profits on the resale of tickets purchased by Blue Sky to the Ministry; and that ATG has been accordingly damaged in the amount of $10 million, representing its 50% share of those profits it was entitled to receive under the profit sharing portion of the contract in Count I.

For the above reasons, the Courts awards damages to Blue Sky and against ATG in the amount of $10 million as a result of defendant ATG's breach of the profit sharing portion of the oral contract in Count I.

The Court will issue an appropriate Order.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
October 21, 2013